CORNHUSKER INTERNATIONAL TRUCKS, INC., APPELLANT, v. THOMAS BUILT BUSES, INC., AND OMAHA TRUCK CENTER, INC., APPELLEES.

637 N.W.2d 876

Filed January 18, 2002. No. S-00-441.

Gary J. Nedved and Gary L. Young, of Keating, O'Gara, Davis & Nedved, P.C., for appellant.

Richard L. Rice, of Kinsey, Ridenour, Becker & Kistler, and Jon P. Christiansen, Brian W. McGrath, and Jessica E. Price, of Foley & Lardner, for appellee Thomas Built Buses, Inc.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Cornhusker International Trucks, Inc. (Cornhusker), appeals from an order of the Lancaster County District Court which confirmed an arbitrator's award. The arbitrator found that Thomas Built Buses, Inc. (Thomas Built), had good cause to terminate its distributor sales agreement (Agreement) with Cornhusker. Cornhusker asserts that termination of the Agreement is controlled by statute and that the matter should not have been arbitrated.

## SCOPE OF REVIEW

■ Arbitration is purely a matter of contract. *Kelley v. Benchmark Homes, Inc.*, 250 Neb. 367, 550 N.W.2d 640 (1996).

■ The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Strategic Staff Mgmt. v. Roseland*, 260 Neb. 682, 619 N.W.2d 230 (2000).

## FACTS

On October 1, 1990, Cornhusker and Thomas Built entered into the Agreement, which authorized Cornhusker to distribute buses produced by Thomas Built. In 1998, Cornhusker was acquired by Navistar, a competitor of Thomas Built in the manufacture of school buses. Thomas Built subsequently sent a letter to Cornhusker notifying it that Thomas Built intended to terminate the Agreement because Cornhusker had been acquired by a competitor. The record indicates that upon termination of Cornhusker's franchise, Omaha Truck Center, Inc. (Omaha Truck), was to begin distributing Thomas Built buses in Nebraska. The matter at issue in this appeal is the arbitration clause of the Agreement between Cornhusker and Thomas Built. Omaha Truck did not file a brief or appear for oral arguments before this court.

Cornhusker filed a petition for equitable relief and a motion for a temporary restraining order in district court, asking the court to enjoin Thomas Built and Omaha Truck from "taking any action to sell, distribute or provide Thomas Built products in the State of Nebraska." Thomas Built filed a motion to compel arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. (1994). The district court denied the request for a temporary restraining order and granted Thomas Built's motion to compel arbitration. The parties were directed to take part in arbitration as provided in the Agreement. Cornhusker's subsequent interlocutory appeal to the Nebraska Court of Appeals was summarily dismissed. See *Cornhusker International Trucks v. Thomas Built Buses*, 8 Neb. App. lxiii (case No. A-99-885, Sept. 14, 1999).

The arbitrator found that Thomas Built's termination of the Agreement was based on good cause. Cornhusker filed a motion in district court seeking vacation of the award; however, the district court granted Thomas Built's motion to confirm the award. Cornhusker appealed, and the case was moved to this court's docket pursuant to our authority to regulate the caseloads of this court and the Court of Appeals.

## ASSIGNMENTS OF ERROR

Cornhusker's first three assignments of error allege that the district court erred in requiring the parties to arbitrate their dispute

because (1) the statutory rights invoked by Cornhusker were not subject to arbitration; (2) the plain language of the Agreement did not require the parties to arbitrate the dispute; and (3) public policy is violated if the arbitration clause in the Agreement is relied on to permit the parties to avoid regulation under Nebraska's motor vehicle industry licensing statutes, currently found at Neb. Rev. Stat. § 60-1401.01 et seq. (Reissue 1998 & Cum. Supp. 2000). Cornhusker also asserts that the district court erred in failing to enjoin Thomas Built from terminating Cornhusker's franchise until Thomas Built complied with the termination procedures mandated by statute and that the district court erred in confirming and failing to vacate the arbitration award.

## ANALYSIS

We first focus on the Agreement, which contains the following pertinent provisions:

> Either party may terminate this Agreement for cause. The Distributor may terminate immediately by written notice stating the effective date of termination. The Company may terminate under the conditions hereinafter provided.
>
> (1) If the Distributor shall fail for a period of 30 days after written notice thereof to correct or remedy, to the satisfaction of the Company, any breach, condition, or deficiency of the following types, the Company may terminate this Agreement by a subsequent written notice advising of the effective date of termination.
>
> . . . .
>
> Any change in the business form, or Ownership, of the Distributorship . . . .

The Agreement also provided:

> Any unresolved dispute arising under this Agreement or in connection with the sale of Equipment or other product by the Company to the Distributor shall be resolved by arbitration in High Point, North Carolina, under the rules of the American Arbitration Association, and judgment upon the award rendered by the Arbiter(s) may be entered in any Court having jurisdiction thereof.

Arbitration is purely a matter of contract. *Kelley v. Benchmark Homes, Inc.*, 250 Neb. 367, 550 N.W.2d 640 (1996). Our review

of the construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. See *Strategic Staff Mgmt. v. Roseland*, 260 Neb. 682, 619 N.W.2d 230 (2000).

Cornhusker argues that arbitration should not have been required because its rights related to termination of the franchise arise under state law rather than under the Agreement. The law concerning motor vehicle industry licensing specifies that a franchisor must file an application with the Nebraska Motor Vehicle Industry Licensing Board (Board) in order to terminate a franchise. See § 60-1424. Section 60-1420(1) states:

Except as provided in subsection (2) of this section, no franchisor shall terminate or refuse to continue any franchise unless the franchisor has first established, in a hearing held pursuant to section 60-1425, that:

(a) The franchisor has good cause for termination or noncontinuance;

(b) Upon termination or noncontinuance, another franchise in the same line-make will become effective in the same community, without diminution of the franchisee's service formerly provided, or that the community cannot be reasonably expected to support such a dealership; and

(c) The franchisor is willing and able to comply with section 60-1430.02.

Thomas Built asserts that because the Agreement provided that any dispute arising under the Agreement would be resolved by arbitration, the dispute as to the termination of the franchise must be resolved by arbitration. Cornhusker argues that its rights are based upon Nebraska's motor vehicle industry licensing statutes, and not upon the Agreement.

In *S & T Motors v. General Motors Corp.*, 203 Neb. 188, 277 N.W.2d 701 (1979), we held that the motor vehicle industry licensing statutes regulate and restrict termination of dealer franchises and create rights in franchisees which would not exist independent of the statutes. The effect of an arbitration clause within the agreement was not before us. The reasoning of the U.S. Court of Appeals for the Seventh Circuit in *S+L+H S.p.A. v. Miller-St. Nazianz, Inc.*, 988 F.2d 1518 (7th Cir. 1993), is

more applicable to the case at bar. In *S+L+H S.p.A.*, the Court of Appeals considered a similar claim. The contract between S+L+H S.p.A. (SLH) and Miller-St. Nazianz, Inc. (Miller), provided that any claim or controversy arising out of or relating to the agreement, its execution, or its breach must be settled by arbitration. When SLH failed to renew the agreement, Miller charged that the failure was a violation of the Wisconsin Fair Dealership Law and a breach of contract. SLH filed suit in federal district court to compel Miller to arbitrate the dispute. Miller argued that the dispute over SLH's nonrenewal did not arise out of or relate to the agreement, but, instead, arose out of the provisions of the Fair Dealership Law and, therefore, was not within the coverage of the arbitration clause.

On appeal, the Court of Appeals stated that the existence of an agreement is a predicate for any claim under the state statute. Miller's claim was based upon the agreement, which included an arbitration clause. The arbitration clause encompassed " 'any controversy or claim arising out of or relating to this Agreement.' " *Id.* at 1520. The Court of Appeals concluded that if the dispute arose out of or related to the agreement, it was subject to arbitration. A claim triggered by the termination of an agreement necessarily arises out of and relates to the agreement. This reasoning is equally applicable to the case at bar.

Cornhusker's reliance on *Chrysler Motors Corp. v. Lee Janssen Motor Co.*, 248 Neb. 322, 534 N.W.2d 309 (1995), *cert. denied* 516 U.S. 988, 116 S. Ct. 516, 133 L. Ed. 2d 424, is misplaced. In *Chrysler Motors Corp.*, we did not consider whether the FAA preempted § 60-1420. Chrysler's declaratory judgment action challenged the constitutionality of certain provisions of the motor vehicle industry licensing statutes. Arbitration of the dispute between the parties was not before us.

We conclude that Cornhusker's claim as to the termination of the franchise was an unresolved dispute arising under the Agreement. Cornhusker's assertion that the matter is based on statutory rights not subject to arbitration is without merit.

Cornhusker next argues that the plain language of the Agreement did not require arbitration of the dispute. In *Kelley v. Benchmark Homes, Inc.*, 250 Neb. 367, 375, 550 N.W.2d 640, 646 (1996), we stated:

Arbitration is purely a matter of contract, and a party cannot be required to submit a dispute to arbitration unless he or she has agreed to do so. . . . When considering a motion to stay litigation in favor of arbitration, a court must first determine whether an agreement to arbitrate exists and then decide whether the dispute before it arises under the agreement and is therefore subject to arbitration.
(Citation omitted.)

It is Cornhusker's position that the Agreement did not require that *all* disputes be submitted to arbitration. The arbitration clause states: "Any unresolved dispute arising under this Agreement or in connection with the sale of Equipment or other product by the Company to the Distributor shall be resolved by arbitration . . . ." Cornhusker argues that the phrase "arising under" covers only disputes relating to the interpretation and performance of the Agreement and that, therefore, its claim based upon the motor vehicle industry licensing statutes does not fall within the arbitration clause. We disagree.

 The FAA requires that any doubts regarding the scope of an arbitration clause be resolved in favor of arbitration. See *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). In *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985), the Court stated that the federal policy favoring arbitration applies just as strongly to claims founded on statutory rights.

The plain language of the Agreement requires arbitration of "[a]ny unresolved dispute arising under this Agreement." The termination of Cornhusker's franchise was an unresolved dispute which arose under the Agreement and was therefore subject to arbitration. Cornhusker's argument is without merit.

Finally, Cornhusker claims that the public policy of the State of Nebraska is violated by requiring the parties to arbitrate their dispute and that it is against public policy to apply the arbitration clause and avoid the requirements of the state motor vehicle industry licensing statutes. In passing the motor vehicle industry licensing statutes, the Legislature declared that

the distribution and sale of motor vehicles in the state under the franchise system vitally affects commerce, the general

economy of the state and the welfare of the citizens of the state requiring the exercise of its police power to [e]nsure the public welfare, to regulate commerce, to establish guidelines for enforcement of a fair and equitable balance between parties to such franchises, and to provide judicial relief from unfair and inequitable practices affecting the public interest.

§ 60-1401.01.

The FAA provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

In *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984), the Court held that the FAA demonstrated the intent of Congress to adopt a "national policy favoring arbitration and [withdrawing] the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." The Court held that only two limitations have been placed on the enforceability of arbitration provisions governed by the FAA: "[T]hey must be part of a written maritime contract or a contract 'evidencing a transaction involving commerce' and such clauses may be revoked upon 'grounds as exist at law or in equity for the revocation of any contract.'" 465 U.S. at 11. In holding that the California Franchise Investment Law violated the Supremacy Clause, the Court stated that "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." 465 U.S. at 16.

In Nebraska, the method of terminating a motor vehicle dealership franchise is found solely within the motor vehicle industry licensing statutes. See, § 60-1420; *Chrysler Motors Corp. v. Lee Janssen Motor Co.*, 248 Neb. 322, 534 N.W.2d 309 (1995), *cert.*

*denied* 516 U.S. 988, 116 S. Ct. 516, 133 L. Ed. 2d 424. In *Chrysler Motors Corp.*, Chrysler attempted to bypass the requirements of § 60-1420, and we held that the authority to regulate the franchise rights of automobile manufacturers and dealers in Nebraska was clearly within the power of the Legislature and that the Legislature had authority to require that termination proceedings involving franchises be heard and determined by the Board.

Subsequently, Nebraska adopted the Uniform Arbitration Act. See Neb. Rev. Stat. §§ 25-2601 to 25-2622 (Reissue 1995 & Cum. Supp. 2000). In 1991, the provision of the Uniform Arbitration Act which authorized binding arbitration in future disputes was held to be unconstitutional, as were clauses in contracts providing for binding arbitration of future disputes. See *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991). In response, the Nebraska Constitution was amended in 1996 to state that the Legislature may provide for the enforcement of mediation, binding arbitration agreements, and other forms of dispute resolution. See Neb. Const. art. I, § 13.

The Uniform Arbitration Act was amended in 1997 to specifically provide that an arbitration clause is not valid in any agreement between parties covered by the motor vehicle industry licensing statutes. By this act, the Legislature made clear that an arbitration clause is not valid in any motor vehicle franchise agreement.

Thomas Built argues that state law is preempted by 9 U.S.C. § 2 and that any state statute concerning arbitration is preempted by the federal statute. In *Kelley v. Benchmark Homes, Inc.*, 250 Neb. 367, 550 N.W.2d 640 (1996), we recognized the two limitations to the enforceability of arbitration provisions set forth in 9 U.S.C. § 2. An arbitration clause must be part of a contract evidencing a transaction involving commerce, and the arbitration clause may be revoked upon grounds as exist at law or in equity for the revocation of any contract.

We have acknowledged that the FAA created a body of federal substantive law which applies to any arbitration agreement within the coverage of the FAA. The FAA represents a liberal federal policy favoring arbitration agreements notwithstanding any state substantive or procedural policies to the contrary. *Smith Barney, Inc. v. Painters Local Union No. 109*, 254 Neb.

758, 579 N.W.2d 518 (1998), citing *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). The U.S. Supreme Court has held that the FAA not only declared a national policy favoring arbitration but withdrew power from the states to require a judicial forum for the resolution of claims which the contracting parties have agreed to resolve by arbitration. See *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995), citing *Southland Corp. v. Keating*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984). In *S+L+H S.p.A. v. Miller-St. Nazianz, Inc.*, 988 F.2d 1518 (7th Cir. 1993), the dealer also argued that the arbitration agreement was void because it violated the Wisconsin Fair Dealership Law. The Court of Appeals rejected the argument that a state statute could void the choice of private parties to arbitrate a dispute, citing *Southland Corp. v. Keating, supra.* The court stated that the U.S. Supreme Court's decision in *Southland Corp.* foreclosed the argument that disputes involving Fair Dealership Law claims were not arbitrable.

We conclude that the FAA applies to the Agreement before us and that the FAA preempts Nebraska law which conflicts with the FAA. " 'Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.' " *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. at 57, quoting *Volt Info. Sciences v. Leland Stanford Jr. U.*, 489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989). The Supremacy Clause of the U.S. Constitution dictates that state law, including state constitutional law, is superseded to the extent that it conflicts with federal law. *Kelley v. Benchmark Homes, Inc., supra.*

The parties contracted to use arbitration to settle any dispute. The Agreement involves commerce, and we find no grounds at law or in equity for its revocation. We find no merit to any of Cornhusker's assignments of error.

## CONCLUSION

The district court was correct in requiring the parties to arbitrate the dispute and in confirming the arbitrator's award. The judgment of the district court is affirmed.

AFFIRMED.

HENDRY, C.J., not participating.