******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SHAWN TITTLE *v.* SUSAN SKIPP-TITTLE
(AC 36231)

Gruendel, Lavine and Mullins, Js.

*Argued September 17—officially released December 1, 2015*

(Appeal from Superior Court, judicial district of Waterbury, Hon. Lloyd Cutsumpas, judge trial referee.)

*Susan Skipp-Tittle*, self-represented, the appellant (defendant).

*Joseph T. Brady*, with whom, on the brief, was *Rosemary E. Giuliano*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The self-represented defendant, Susan Skipp,[1] appeals from various orders entered over four years of litigation following her uncontested divorce from the plaintiff, Shawn Tittle, on March 28, 2011. This court previously dismissed the appeal in part. As to the remaining claim on appeal—i.e., that the trial court erred in denying the defendant's motion to reinstate alimony on October 8, 2013—we now affirm the judgment of the trial court.

The following facts, as found by the court, are relevant here. When the court dissolved the parties' marriage on March 28, 2011, pursuant to their separation agreement, it awarded the defendant $1803 per week in alimony and $534 per week in child support. Alimony was to end on the earliest of: (1) death; (2) remarriage; or (3) January 1, 2018. The judgment stated both that "[t]he *duration* of the alimony shall be non-modifiable"; (emphasis added); and that each party's annual income could increase by up to $25,000 before that change would justify modifying the amount of alimony. At the time, the plaintiff was earning $375,000 per year and the defendant was earning $56,000 per year. Also pursuant to their separation agreement, the court awarded the parties joint legal custody of their minor children, with the defendant's home to serve as the children's primary residence.

Several months later, the plaintiff moved to modify the financial orders. The court granted his motion on December 28, 2011, stating that the "[p]laintiff's court ordered obligations to pay alimony and child support are temporarily suspended until further order of the court." This modification was due to the plaintiff's changed financial situation—at the time of the hearing, he was earning only $43,368 per year while the defendant was earning more than $60,000 per year. The court found that the plaintiff did "not have the present ability to make payments of alimony" because he had been forced to change jobs "in large part due to [the] defendant's actions," which it described in greater detail. The court clarified its 2011 modification two years later on August 23, 2013, stating that the prior order had been "intended to render ineffective, and to stop and reduce to zero, the orders of alimony and child support until further order of the court. It was not the intention of these orders to allow the accrual of alimony, but simply to end the plaintiff's obligation to pay alimony until further order of the court."

The court modified the custody orders on October 16, 2012, awarding sole legal custody of the parties' minor children to the plaintiff, entering numerous protective orders against the defendant, and awarding significantly reduced, conditional visitation with the children to the defendant. The judgment provided that

the defendant "may not exercise her [visitation] time unless she [complies with the conditions]." This modification was due to the defendant's actions, which the court described extensively. At the time of the October 8, 2013 judgment that is the subject of this appeal, the defendant had not seen her children in more than a year.

The court considered three motions in its October 8, 2013 judgment: (1) the defendant's motion to reinstate alimony; (2) the plaintiff's motion for child support; and (3) the guardian ad litem's motion for contempt. As to the second and third motions, the court denied the plaintiff's motion for child support and noted that the guardian ad litem had chosen not to proceed with her motion for contempt.

As to the first motion, the court denied the defendant's motion to reinstate alimony, finding: "The burden of [child] support has fallen solely on the plaintiff who has been assisted to a large extent by his present wife. . . . The plaintiff remains the primary caregiver for the two minor children of the parties, ages [eleven] and [thirteen], who continue in court ordered therapy and have had more than their share of disruption in their young lives. These duties also impact on the plaintiff's opportunity to expand his [medical] practice, increase his income and pay alimony." The court discussed the defendant's role in bringing about that situation. Finally, the court noted that the defendant's employment recently had been terminated and that she was collecting unemployment benefits of $519 per week. The court found that "she lost her job as a result of her own actions," which included two arrests, one for stalking and one for violating a protective order.

On October 25, 2013, the defendant filed this appeal from the October 8, 2013 judgment and from various other orders dating back to the original March 28, 2011 judgment of dissolution. This court dismissed the appeal in part as untimely, insofar as it challenged judgments rendered before the court's October 8, 2013 judgment. A party has twenty days to appeal a judgment; Practice Book § 63-1 (a); and no other judgment fell within twenty days of the defendant's October 25, 2013 appeal.[2] This court also dismissed the appeal in part for lack of a final judgment, insofar as it challenged the court's October 8, 2013 ruling on the guardian ad litem's motion for contempt because the court did not decide that motion. The sole issue remaining on appeal is whether, on October 8, 2013, the court improperly denied the defendant's motion to reinstate alimony. We conclude that it did not.

At the outset, we note that our rules of practice do not recognize a "motion to reinstate alimony." Nevertheless, "[w]e are mindful that we should be solicitous to [self-represented] petitioners and construe their pleadings liberally . . . ." (Internal quotation marks

omitted.) *Markley* v. *Dept. of Public Utility Control*, 301 Conn. 56, 74, 23 A.3d 668 (2011). "[I]t is the substance of a motion . . . that governs its outcome, rather than how it is characterized in the title given to it by the movant." (Internal quotation marks omitted.) *Mark* v. *Neundorf*, 147 Conn. App. 485, 488 n.5, 83 A.3d 685 (2014) The defendant's motion could be construed as either a motion to open the court's December 28, 2011 judgment reducing alimony to $0 per week, or a motion to modify alimony. See *Jones* v. *Jones*, Superior Court, judicial district of Waterbury, Docket No. FA-87-078550-S (October 24, 1995). We address each in turn.

I

To the extent that the defendant's motion seeks to open the December 28, 2011 judgment reducing alimony to $0 per week, the court did not abuse its discretion in denying her motion because the time to challenge any defect in the 2011 judgment other than subject matter jurisdiction had long since passed, and the court had subject matter jurisdiction.[3]

Ordinarily, a party must move to open a judgment within four months of its issuance.[4] See General Statutes § 52-212a. Within certain boundaries, however, "a challenge to *subject matter jurisdiction* can be raised at any time and . . . the court must fully resolve it before proceeding further with the case." (Emphasis added; internal quotation marks omitted.) *Sousa* v. *Sousa*, 157 Conn. App. 587, 599–600, 116 A.3d 865, cert. granted, 317 Conn. 917, 118 A.3d 61 (2015). We thus consider the defendant's arguments to the extent that they challenge the court's subject matter jurisdiction at the time it rendered the December 28, 2011 judgment.[5]

We begin with the standard of review. Although we review a court's decision to grant or deny a motion to open a judgment for abuse of discretion; *Wilkinson* v. *Boats Unlimited, Inc.*, 236 Conn. 78, 84, 670 A.2d 1296 (1996); the underlying issue of subject matter jurisdiction is a question of law over which our review is plenary. *First American Title Ins. Co.* v. *273 Water Street, LLC*, 157 Conn. App. 23, 29, 117 A.3d 857 (2015). "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . [I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999).

Here, General Statutes § 46b-1 (4) provides that the Superior Court has subject matter jurisdiction over legal disputes in "family relations matters," including ali-

mony, and General Statutes § 46b-86 (a) provides that the court has continuing subject matter jurisdiction to modify alimony orders. *Amodio* v. *Amodio*, supra, 247 Conn. 729–30.

None of the procedural defects that the defendant alleges, even if true, deprived the court of that jurisdiction. In brief, the mosaic doctrine she cites is irrelevant to subject matter jurisdiction. See *Marshall* v. *Marshall*, 119 Conn. App. 120, 136, 988 A.2d 314 (mosaic doctrine permits courts to reconsider all interrelated financial orders on remand), cert. granted, 296 Conn. 908, 993 A.2d 467 (2010) (appeal withdrawn November 18, 2010). Failure to append a request for leave to file a motion pursuant to Practice Book § 25-26 (g) does not implicate subject matter jurisdiction. Cf. *State* v. *Carey*, 222 Conn. 299, 307, 610 A.2d 1147 (1992) ("Practice Book rules do not ordinarily define subject matter jurisdiction"). Failure to file a timely motion to open implicates personal jurisdiction and the court's authority, not subject matter jurisdiction. See *In re Baby Girl B.*, 224 Conn. 263, 288, 618 A.2d 1 (1992). The provision in the parties' judgment of dissolution stating that the "duration of the alimony shall be non-modifiable" implicates the court's authority, not subject matter jurisdiction. See *Amodio* v. *Amodio*, supra, 247 Conn. 727–32 (clause in judgment of dissolution forbidding modification not truly jurisdictional). Finally, the defendant has cited no case—and we are aware of none—to support her claim that violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., deprive a court of subject matter jurisdiction.

The court did not abuse its discretion in denying the defendant's motion insofar as it sought to open the December 28, 2011 judgment for lack of subject matter jurisdiction.

## II

To the extent that the defendant's motion seeks to modify alimony, the court did not abuse its discretion in denying the motion because the defendant did not prove a substantial change in circumstances. "Our review of a trial court's granting or denial of a motion for modification of alimony is governed by the abuse of discretion standard. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Citation omitted; internal quotation marks omitted.) *Light* v. *Grimes*, 156 Conn. App. 53, 64, 111 A.3d 551 (2015).

In her motion, the defendant sought to change her periodic alimony from $0 per week back to its original amount of $1803 per week. To do so, she had to show that: (1) a "substantial change in circumstances" occurred *after* the court's December 28, 2011 judgment reducing the alimony to $0 per week; and (2) that

change warranted a change in alimony, in light of the factors laid out in General Statutes § 46b-82. See *Borkowski* v. *Borkowski*, 228 Conn. 729, 735–36, 638 A.2d 1060 (1994) ("[t]o avoid re-litigation of matters already settled, courts in modification proceedings allow the parties only to present evidence going back to the latest petition for modification" [internal quotation marks omitted]).

The defendant failed to meet her burden. To qualify as a substantial change in circumstances, a change or alleged inability to pay "must be excusable and not brought about by the defendant's own fault." *Olson* v. *Mohammadu*, 310 Conn. 665, 674, 81 A.3d 215 (2013). Here, the record contains only one arguably substantial change that occurred after the December 28, 2011 judgment, namely, the defendant's loss of her job. The court, however, expressly found that the defendant "lost her job as a result of her own actions," which included two arrests. This finding meant that, under *Olson*, the change was not a "substantial change in circumstances" for purposes of § 46b-86. The defendant did not meet her burden of proving a substantial change in circumstances. Accordingly, the court did not abuse its discretion in denying her motion, insofar as the motion sought to modify alimony.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant's surname was restored from Skipp-Tittle to Skipp upon dissolution of the marriage.

[2] Although Connecticut courts construe the rules of practice liberally in favor of self-represented parties, "the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 570, 877 A.2d 761 (2005).

[3] Although General Statutes § 52-212a preserves courts' common-law authority to open judgments after the four month period under other, limited circumstances; see *Bruno* v. *Bruno*, 146 Conn. App. 214, 230, 76 A.3d 725 (2013); the defendant expressly disclaimed any reliance on such circumstances in this motion because she had alleged them instead in a separate motion to vacate based on fraud.

[4] The defendant argues that, because the court used the word "temporarily" in the December 28, 2011 judgment, it was not a final judgment and so she could not challenge it at that time. On the contrary, "a ruling by a trial court regarding financial issues in a marital dissolution case . . . [in response to] . . . a postjudgment motion . . . is a final judgment for purposes of appeal." *Ahneman* v. *Ahneman*, 243 Conn. 471, 479, 706 A.2d 960 (1998).

[5] To the extent that the defendant challenges the court's *personal jurisdiction* over her when it granted the plaintiff's motion to modify alimony on December 28, 2011, she has waived that objection. "[A] party may waive its objection to a trial court's erroneous exercise of personal jurisdiction if that party generally appears in the case and actively prosecutes the action or contests the issues. . . . There can be no waiver, however, if the party being haled into court [f]ar from consenting to or waiving objection to [the court's] action . . . advance[s] strenuous opposition to it and steadfastly maintain[s] that position thereafter." (Citations omitted; internal quotation marks omitted.) *In re Baby Girl B.*, 224 Conn. 263, 292, 618 A.2d 1 (1992). As a general matter, "a party waives the right to dispute personal jurisdiction unless that party files a motion to dismiss within thirty days of the filing of an appearance." *Foster* v. *Smith*, 91 Conn. App. 528, 536, 881 A.2d 497 (2005). Here, the defendant appeared at the December 19, 2011 hearing, argued the matter, and continued to litigate the case for almost another two

years before she filed her first motion to dismiss on any jurisdictional ground on October 1, 2013. She, therefore, has waived any objection to personal jurisdiction.